* * * * * * * * * * *
The Full Commission has reviewed the prior Decision and Order based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and upon reconsideration, the Full Commission affirms in part and modifies in part the Decision and Order of the Deputy Commissioner.
 * * * * * * * * * * * *Page 2 
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are properly before the Commission and the Commission has jurisdiction of the parties and the subject matter.
2. All parties have been correctly designated and there is no question as to misjoinder or non-joinder of parties.
3. In her affidavit plaintiff named as allegedly negligent State employees Sergeant Gregory Allan Thomas, Sergeant Roderick Watson, Captain Harris, Warden Annie Harvey and District Supervisor Jennie Lancaster.
4. The following were admitted into evidence at the Deputy Commissioner's hearing:
 a. Plaintiff's Exhibit 4, Request for Admissions (Pages 29-34)
 b. Plaintiff's Exhibit 10, Prison Records of Tawanda Johnson (received July 1, 2005) (Pages 64-184)
 c. Plaintiff's Exhibit 13, North Carolina Department of Correction, Rules and Policies, Inmate Booklet (Pages 213-278)
 d. Plaintiff's Exhibit 14, Personnel Records of Wendell Borom (Pages 279-285)
 e. Plaintiff's Exhibit 15, Certified Copy of Indictment, transcript of plea, judgment and commitment of Gregory Thomas, Stacy Joel Hester, and Wendell Borom (Pages 399-425)
 f. Plaintiff's Exhibit 15.1, Certified Copy of Transcript of Proceedings on *Page 3 
State of North Carolina v. Wendell Borom (Page 118)
 g. Plaintiff's Exhibit 9, Defendant's Answers to Plaintiff's First Set of Interrogatories and Request for Production of Documents (Pages 49-63)
 h. Exhibit 11, Prison Records of Tawanda Johnson (received of November 1, 2005) (Pages 185-207)
 i. Defendant's Exhibits 1, 2, 3, 5, 6, 7, 8, 9, 10
Plaintiff's Exhibits 9 and 11 were admitted for the purposes of determining sanctions against defendant for failure to abide by prior discovery orders of the Commission.
5. On May 26, 2005, Deputy Commissioner George T. Glenn, II entered an order granting partial summary judgment in favor of plaintiff on the issue of negligence pursuant to Rule 36 of the North Carolina Rules of Civil Procedure, based on defendant's untimely response to plaintiff's request for admissions. Therefore, the facts presented in plaintiff's request for admissions were deemed admitted.
6. The sole remaining issue to be determined by the Commission is the amount of damages that plaintiff is entitled to recover as a result of defendant's negligence.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was incarcerated as an inmate in the North Carolina Correctional Institute for Women (NCCIW — Raleigh) from approximately September 26, 1996 until approximately August 8, 2002.
2. On March 29, 2001, plaintiff was assigned to work in the dining room under the *Page 4 
direct supervision of prison guards and prison staff, including Officer Wendell Borom. Plaintiff understood and was instructed by prison staff that she must follow the orders, directions and requests of all prison staff, including Officer Borom. Plaintiff understood that when she refused to follow or did not follow the requests of prison staff, including Officer Borom, she would receive punishment, including but not limited to confinement to a single cell that was removed from the general prison population (known as "lock up.") Other forms of punishment ranged from harsh treatment by the prison staff to removal of inmate privileges.
3. As soon as plaintiff was assigned to work in the dining room under Officer Borom, Officer Borom began to flirt with plaintiff and tell her that he was physically attracted to her and wanted to have children with her. He bought plaintiff food and drink items, allowed her to remove food and drink items from the dining hall, which was against prison rules, and gave plaintiff small sums of money. Officer Borom began isolating plaintiff away from other inmates and staff so that he could flirt with her in isolation while he fondled her body, touched and kissed her breasts, and inserted his fingers into her vagina. He also made plaintiff rub his penis with her hands. On several occasions, Officer Borom asked plaintiff to undress so that he could view her naked body. He told her to submit to his requests at all times because he could "make life easy for her or make life hard for her."
4. From approximately April 18 through May 17, 2001, Officer Borom isolated plaintiff from the general population and made her meet him in private places. From March 29 through May 17, 2001, Officer Borom flirted with plaintiff and made humiliating and degrading comments to her in the presence of other officers and inmates, including nicknaming plaintiff "Caramel." During this time, he continued to tell plaintiff that she must do as he said or he would make life tough for her. Officer Borom continued to provide plaintiff with small sums of *Page 5 
money, food items, including drinks and other privileges not allowed to other inmates.
5. On April 18, April 30 and May 6, 2001, Officer Borom isolated plaintiff away from the general population and made plaintiff undress. Officer Borom then fondled and kissed her breasts, buttocks, and vaginal area. Officer Borom inserted his fingers into plaintiff's vagina and made her put her hand on his penis. He put on a condom and then engaged in sexual intercourse with plaintiff. On one occasion Officer Borom had sexual intercourse with plaintiff while she was lying on bags of flour in a stockroom. On another occasion he engaged in sexual intercourse with plaintiff while she was bent over the dirty toilet, with her face several inches from the toilet bowl. On these three occasions, other prison staff and inmates witnessed Officer Borom isolate plaintiff from the rest of the population.
6. On May 17, 2001, Officer Borom again isolated plaintiff from the general population. On this occasion, he made plaintiff meet him in a stock room or other room in the dining hall building. Officer Borom attempted to make plaintiff engage in sexual acts on this occasion; however, another prison staff member became aware of Officer Borom and plaintiff's presence in this room and stopped Officer Borom's attempt to have sexual intercourse with plaintiff.
7. From March 29 through May 17, 2001, Officer Borom made sexually oriented comments to plaintiff while in the presence of other officers and other inmates. Other prison staff also made comments expressing their knowledge of Officer Borom's conduct and behavior with plaintiff while in the presence of plaintiff and other officers and inmates. Prior to May 17, 2001, none of defendant's officers or staff made any attempts to intervene and stop Officer Borom's conduct and behavior with plaintiff.
8. The Commission finds that defendant knew or should have known of the illicit *Page 6 
behavior between plaintiff and Officer Borom, but took no action to prevent that behavior.
9. During all the times Officer Borom interacted with plaintiff, he was on the job and performing his duties as a prison guard and officer of the prison facility. At all times, plaintiff was under Officer Borom's direction, custody and control while she was assigned to duties in the kitchen and dining area.
10. On December 12, 2001 in Wake County Superior Court, Officer Borom pled guilty to three counts of felonious sexual activity with plaintiff by a custodian, in violation of N.C. Gen. Stat. § 14-27.7, and the dates alleged in the criminal charges were April 18, April 30, and May 6, 2001.
11. Between February 2000 and the end of June 2001, during the time that plaintiff was incarcerated in the prison facility, two other officers, Sergeant Gregory Allen Thomas and Stacy Joel Hester, also engaged in sexual activity with inmates. Sergeant Thomas and Officer Hester were also charged with engaging in sexual activity with female inmates by a custodian. Both officers were charged with these crimes while they were employed by and acting under their authority as correctional officers employed by the prison where plaintiff was incarcerated. Both Thomas and Hester pled guilty to reduced charges as part of a plea bargain.
12. From March 29, 2001 through May 17, 2001, the time that plaintiff was assigned to the dining hall under Officer Borom's supervision and direction, plaintiff sustained physical and emotional pain and injuries as a result of defendant's negligent failure to adequately supervise Officer Borom, which allowed a pattern of sexual activity between correctional officers and inmates at NCCIW-Raleigh.
13. After a complaint of sexual activity between inmates and correctional officers was made to a prison staff member, defendant began an investigation, and plaintiff was placed into *Page 7 
administrative lock up for several weeks. In addition, plaintiff was removed from NCCIW-Raleigh and taken to a Department of Correction facility located in Lexington, North Carolina from June 13, 2001 through July 3, 2001.
14. On June 4, 2001, plaintiff's personal items were seized by the State Bureau of Investigation and Department of Correction staff, and the Department of Correction maintained control and custody of these items until some items were returned to plaintiff by defense counsel in response to plaintiff's request in discovery. As of the date of the Deputy Commissioner's hearings, some of plaintiff's items had not yet been returned to her possession, including letters, photographs of family members, other miscellaneous items, and plaintiff's family Bible.
15. As a result of defendant's negligent supervision of Officer Borom, plaintiff suffered humiliation, degradation, feelings of worthlessness, helplessness, fear and was disgraced, demoralized, intimidated, and embarrassed. She also experienced anxiety and thoughts of suicide. After her last encounter with Officer Borom, plaintiff had nausea, vomiting, loss of appetite, loss of weight, and insomnia. Plaintiff continues to experience nightmares, panic attacks, insomnia and has lost her sex drive. She has expressed little, if any, hope for her future.
16. In May and June of 2001, plaintiff sought medical attention for vaginal discharge and an AIDS test, respectively. This medical treatment further humiliated, embarrassed and caused plaintiff great anxiety, fear and emotional pain.
17. As the proximate result of defendant's negligent supervision of Officer Borom, plaintiff sustained physical injuries when Officer Borom forced her to have sex with him. On April 18, 2001, plaintiff sustained physical injury to her body as a result of having sex for the first time in many months. She also had bruises to her back. On April 30, 2001, plaintiff *Page 8 
sustained physical injury to various parts of her body, including her vagina, as a result of being forced to have sex with Officer Borom while being bent over a dirty toilet. On May 6, 2001, plaintiff sustained physical injury to various parts of her body, including her vagina, as a result of being forced to have sex with Officer Borom. She had bruises to her knees and legs from being forced to straddle Officer Borom while he was on his back on the floor. Plaintiff did not seek medical treatment for these injuries while at NCCIW-Raleigh.
18. The reasonable value of the physical and emotional pain and suffering which plaintiff sustained as a proximate result of the injuries caused by defendant's named employees is $150,000.00.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. N.C. Gen. Stat. § 143-291(a) confers the North Carolina Industrial Commission with jurisdiction to hear tort claims against the State Board of Education, the Board of Transportation, and all other departments, institutions and agencies of the State.
2. Under the provisions of the Tort Claims Act, negligence is determined by the same rules applicable to private parties. Bolkhir v.N.C. State University, 321 N.C. 706, 709, 365 S.E.2d 898, 900 (1988).
3. The Tort Claims Act provides that the State is liable for the negligent acts of its employees. N.C. Gen. Stat. § 143-291 et seq.
4. The North Carolina Department of Correction had a duty of reasonable care to protect plaintiff from reasonably foreseeable harm. Failure to do so constitutes negligence. *Page 9 Taylor v. North Carolina Dept. of Correction, 88 N.C. App. 446, 451,363 S.E.2d 868, 871 (1988).
5. Pursuant to N.C. Gen. Stat. § 14-27.7, consent by a female in a male officer's custody is not a defense to engaging in any sexual activity with that inmate. Officer Borom engaged in unlawful sexual intercourse with plaintiff on April 18, April 30 and May 6, 2001. Defendant knew or should have known of the illicit behavior between plaintiff and Officer Borom, but took no action to prevent that behavior. Therefore, defendant was negligent in the supervision of Officer Borom.
6. The greater weight of the evidence fails to show that plaintiff was contributorily negligent in any manner that may have resulted in her injuries. N.C. Gen. Stat. § 143-291(a).
7. As the proximate result of defendant's negligent supervision of Officer Borom, plaintiff suffered physical and emotional pain and injuries as a result of being forced to have sex with Officer Borom. N.C. Gen. Stat. § 143-291 et seq.
8. The negligence of defendant's named employees proximately caused plaintiff's physical and emotional pain and suffering for which she is entitled to receive $150,000.00.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff shall have and recover $150,000.00 as reasonable damages for the injuries she sustained as the result of defendant's negligence.
2. Defendant shall pay the costs.
 This 25th day of September, 2008. *Page 10 
S/________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/________________________ PAMELA T. YOUNG CHAIR
DISSENTING:
 S/________________________ BUCK LATTIMORE COMMISSIONER *Page 11